NATIONAL LABOR RELATIONS BOARD
v. ELECTRONICS EQUIP-
MENT CO., Inc.

No. 292, Docket 22136.

United States Court of Appeals
Second Circuit.

Submitted June 1, 1953.

Decided June 19, 1953.

Clark, Circuit Judge, dissented.

A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., for petitioner.

Ashe & Rifkin, New York City (George Rifkin, New York City, of counsel), for respondent.

Before CHASE, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

The issues presented by this petition are stated in our previous opinion. National Labor Relations Board v. Electronics Equipment Co., 2 Cir., 194 F.2d 650. In supplemental proceedings, following our remand for that purpose, a hearing was had before a Trial Examiner who, after considering the evidence introduced, filed a report which has now been adopted by order of the Board. The finding on the question to be resolved on the remand is shown by the following excerpt from the examiner's report:

"I find that the Committee engaged in the circulation of the two letters and in the establishment and maintenance of the picket line and related picket line activities in order to obtain, as at least one of its objectives, an exclusive bargaining agreement for Local 65 dealing with wages, hours and other terms and conditions of employment and covering all except the Respondent's office clerical employees. I conclude, therefore, that in the context in which they were written, the July 8 and 12 letters showed that Penchansky and the other individuals who transmitted the letters intended in fact, when sending the letters, to pursue the aim of obtaining an exclusive-bargaining contract."

That being so, the majority of this court is of the opinion that the sending of the letters was not protected by Section 7 of the Act, 29 U.S.C.A. § 157, and that our previous denial of the enforcement of the Board's order should become absolute.

Enforcement denied.

CLARK, Circuit Judge (dissenting).

After time out of a year and a half for futile fact finding, we are now brought back by the Board's reaffirmation of its original position and renewed request for enforcement of its order to the question initially before us of its power in the premises. The interlude seems, however, to have obscured the original problem; for the brief Per Curiam herewith assumes decision of the point expressly left undecided in the original opinion, 2 Cir., 194 F.2d 650, 654. But in denying enforcement, my brethren necessarily hold that action taken to obtain a security contract after consent to an election contest with a rival union, but before certification, is *as a matter of law* not protected activity under 29 U.S.C. § 157. The propriety of such action by one union once another union appeared to challenge its representative status was carefully considered by Congress when it enacted the Taft-Hartley Act. That Act makes it an unfair labor practice for a union to strike to force bargaining with it "if another labor organization *has been* certified as the representative of such employees under the provisions of section 159 of this title." 29 U.S.C. § 158(b) (4) (C). (Italics supplied.) In my judgment we are not entitled to extend this prohibition to such activity *before* certification and while proceedings for an election are pending so as to deny the Board any power whatsoever to afford the union at that time the protection of 29 U.S.C. § 157. As we said in Rabouin v. N. L. R. B., 2 Cir., 195 F.2d 906, 912: "But in a matter of such bitter controversy as the Taft-Hartley Act, the product of careful legislative drafting and compromise beyond which its protagonists either way could not force the main body of legislators, the courts should proceed cautiously."

The harsh nature of the result here makes that admonition particularly apt. After the union had accepted the necessity of facing a vote with a later-come opponent and had entered into a consent for an election, the employer discharged all its members but Penchansky. When the union could not get them taken back, it filed charges with the Board, which thereupon started proceedings and as a corollary postponed the election. This left the union in a serious quandary. It was dissipated for all intents and purposes unless it acted in the only way left, namely, to press for a security contract by such weapons of pressure as it could command. Certainly forcing a small local union such as this, consisting of only about a dozen members, into inert suspended animation while the election is postponed for a period already of over four years is an effective way of bringing about its demise. Under these circumstances it would seem that Penchansky, who dutifully participated in the union's objective by writing and sending the letters in question to customers of the employer, could not be held as a matter of law to have made himself an outlaw so that the Board could not find his summary discharge (the final one ending his union) unfair.

Yet it is just this power that we are now denying the Board. Moreover, the majority holding here raises some additional confusion because, it seems to me, we originally misstated the Board's view of its own rule of Midwest Piping & Supply Co., 63 N.L.R.B. 1060 (1945), as affected by the Taft-Hartley provisions discussed above. That rule holds it an unfair labor practice for an employer to recognize one union as an exclusive bargaining agent while the petition of a rival union for certification is pending before the Board. Hence the trial examiner here thought the union's purpose was to force the employer to violate the Act. But the Board answered that there would be a violation only if, at the time recognition was granted, a real question of representation was still pending and that many things might occur to prevent this, such as withdrawal of the petition for representation or its dismissal by the Board for any number of reasons; moreover, the employer, without violating the law, might grant recognition to each of the claimants on a members-only basis. 94 N.L.R.B. 62, 64, 65. This obviously leaves the question as one of fact, depending on the situation as of the time of complaint, which, it seems to me, is the desirable approach. Thus the Board does not hold that the Midwest Piping rule, as applied in this setting, is

overturned by the later Act; it does hold that the rule is confined to its proper function of enforcing the basic neutrality of the employer between rival unions and is not employable as a mere vehicle for employee discharge and union destruction. Here the election was indefinitely postponed; it was obviously going to take years before litigation brought results, and meanwhile the union was out of the factory. I think it therefore legally permissible for the Board to find that Penchansky's activities upon behalf of his union did not justify his discharge. The Board has obviously given the matter the most careful thought. Each time it has had to overrule its trial examiner. One member dissented from its original order, although there appears no dissent from the present reaffirmation of that order. This seems to me peculiarly a case for the Board's expertise, not for a court's bludgeon. And if I am right that adjudication is one of fact and of administrative discretion, not of legal mandate, then Hoover Co. v. N. L. R. B., 6 Cir., 191 F.2d 380, falls into its proper place; for there the facts were quite different, involving a nationwide boycott, continued even after an overwhelming vote for the rival union.

I do not believe our delayed and harsh action here will do much to promote settled or smooth labor relations in this unhappy plant. I think an enforcement order should issue.

L. Hand, Circuit Judge, dissented in part.